The Attorney General has considered your request for an opinion wherein you ask, in essence, the following questions: 1) Does a County Excise Board have authority to impose a "salary administration plan" on elected county officials? 2) If the answer to question one is affirmative, must such a plan be in writing and furnished to the elected county officials ? 3) What limitations, if any, should there be in such a plan? 4) Does a County Excise Board have the authority to direct any county employee or officer regarding his duties, responsibilities, and time frame within which such directives will be fulfilled? 5) Can a County Equalization Board employ employee(s) other than appraisers? 6) Can a County Excise Board employ employee(s) and assign such employee(s) to work for the County Equalization Board ? 7) As the statutes prescribe a definite time during which a County Equalization Board shall be in session, may such board retain an employee after the board adjourns and before a new board convenes by law? 8) If the answer to question seven is affirmative, who employs such an employee, who pays such an employee, and to whom does such an employee report during the time in which no board is constituted? The questions here asked seek to define the new role of county excise boards in salary determination questions. To determine that role an analysis of the nature and function of these boards must be made. County excise boards are created by statute and consist of three (3) persons, one appointed by the Oklahoma Tax Commission, one by the district judges, and one by the county commissioners, 68 O.S. 2457 [68-2457] (1979). These excise boards are, by statute, agencies of the state and a part of the system of checks an balances, 68 O.S. 2486 [68-2486] (1971). That statute also empowers the boards to require adequate accounting by local government, requires funding of mandatory constitutional and statutory governmental functions within the revenue available, and denies such boards authority to deny an appropriation for a lawful purpose if within the income and revenue provided. These boards review estimates of need and compute the amount of the levy of ad valorem taxes to fund local government, making reductions in budgets if the estimates are in excess of the means available, 68 O.S. 2487 [68-2487] (1979). That statute also grants the power to the board to strike items from the estimates of needs if they are unlawful or, under the new amendment, "in excess of needs as determined by the excise board." Such boards further have authority under Okla. Const. Article X, Section 9 to apportion the fifteen mill ad valorem levy between cities, the county, and school districts. The basic purpose of excise boards was noted by the Court in City of Ardmore v. Excise Board of Carter County, 155 Okl. 126, 8 P.2d 2, 7 (1932): "Prior to the adoption of the excise board statute, the various tax paying units assessed taxes independently of each other, and the taxes as assessed were extended upon the tax roll. Confusion arose therefrom, and it was deemed necessary that some agency be established for the supervision thereof, and that the aggregate might be kept within the constitutional and statutory limitations. The board known as the excise board was created for that purpose." Prior to the 1979 amendments to 19 O.S. 180.65 [19-180.65] (1978) and 68 O.S. 2487 [68-2487] (1971), the role of excise boards in determining amounts "needed" was strictly limited. As the Court noted in Oklahoma County Excise Board v. Kurn,184 Okl. 96, 85 P.2d 291, 292 (1938): ". . . with reference to the making of appropriations for current expense, . . . if the authority for the expenditure estimated to be needed exists, the discretion as to whether or not it should be made is with the local governing board. "In the case of State ex rel. Board of Education v. Excise Board of Payne County et al.155 Okl. 227, 7 P.2d 473, this court held: 'If the estimated needs of an independent school district for the general fund expense of such district can be supplied within the statutory limitations, it is the duty of the excise board to make the appropriations therefor in the amounts estimated to be needed for that purpose, and the excise board is not authorized to make the appropriations in a lesser amount than that estimated to be needed if the amount estimated to be needed can be appropriated within the constitutional and statutory limitations. "Generally the same rule applies to common school districts and other municipalities. School District No. 4, Garfield County v. Independent School Dist. No. 4 1/2, 153 Okl. 171, 4 P.2d 1031; In re Tax Levies of City of Woodward, Excise Board of Woodward v. Reid, 143 Okl. 204, 288 P. 458; City of Ardmore v. Excise Board, supra." The language of the 1979 amendments alters this principle in some respects. The questions here asked arise as a result of the enactment of Laws 1979 Ch. 26 1, 2. That act amended 19 O.S. 180.65 [19-180.65] (1978) and was the third amendment to the statute as codified in 1971. Under the 1971 statute, county officers could hire such assistants and deputies at such rates of salary or pay as the ". . . principal officer may propose and establish the need of and the county commissioners will approve . . ." The statute provided that each officer's first or chief deputy or assistant could receive a salary not to exceed ninety percent (90%) of his principal officer's salary, and that if the officer had a "second deputy" or "second assistant" that deputy or assistant could receive a salary ". . . not to exceed eighty percent (80%) of the salary of the principal officer." However, the statute went on to provide that these salaries within the limitations ". . . shall be such amounts as the principal officer may propose and establish the need for and the county commissioners will approve." Subsection (d) of the statute provided criteria for salary determination, listing as factors for consideration ". . . responsibility, risks, skills, training, and experience required for such position and afforded by the subordinate . . .". In 1976 this statute was amended. Under the 1976 amendment the county commissioners were to recommend the total amount of funds for salary budgets, but their review of the salary level for other officers' deputies or assistants was eliminated. Those salaries were to be such amount as the "principal officer shall establish." The language ". . . and which the county commissioners will approve . . ." was deleted by the amendment. In 1979 the statute was again amended. The amendment changed the language regarding setting of salaries in such amount as ". . . the principal officer shall establish." The language of the 1971 statute was readopted with the exception that in place of the county commissioners as the reviewing body, the Legislature placed the review power in the county excise board. Under the 1979 amendment, the salary of deputies or assistants shall be the amount which ". . . the principal officer shall propose and establish the need of and the county excise board will approve . . ." Under the amendment the county commissioners still recommend the total salary budget for the affected offices but have no review of individual salaries. The 1979 amendment requires for the first time that county excise boards meet with the elected officers in a budget planning conference to discuss personnel needs and disclose anticipated revenues. By the same amendatory act, the Legislature in 1979 amended 68 O.S. 2487 [68-2487] (1971). The significant amendment was to subsection (2) of that statute. The amended version, with the language of the 1979 amendment underlined below, provides: "As to each budget, original or supplemental, the county excise board shall proceed in the following order: (2) Examine specifically the several items and amounts stated in the estimate of needs, and if any be contained therein not authorized by law or that may be contrary to law, or in excess of needs, as determined by the excise board said item shall be ordered stricken and disregarded. If the amount to any lawful item exceeds the amount authorized by law, it shall be ordered reduced to that extent; otherwise, the excise board joins in responsibility therefor . . ." By these amendments, the Legislature has given the excise boards more authority in dealing with county budgets. The 1979 amendments to 19 O.S. 180.65 [19-180.65] and 68 O.S. 2487 [68-2487] give the county excise boards some discretion as to salaries of deputies and assistants to county officers and give the boards a new role in determining whether budget requests are "in excess of needs." We note that the latter role may requires some interpretation as to its scope and application under the principles announced in City of Ardmore v. Excise Board of Carter County, 155 Okl. 126, 8 P.2d 2 (1932). Those questions, however, are not within the scope of the questions here asked and for that reason will not be considered in this opinion. Analysis of the statutes concerning county excise boards reveals no general superintending authority of the board over county officers or county affairs. The 1979 amendment above referenced extended some additional budgetary authority in the boards but went no further. The first three questions you ask concern a "salary administration plan". For purposes of this opinion, "salary administration plan" is understood to be a program or plan which establishes salary ranges for county employees, sets out guidelines for individual salary changes, and establishes policy regarding salary rates for new employees, probationary periods, promotions, demotions, job classification changes, and the amount and timing of salary increases. As such it is not unlike the basic schematics of the State Merit System of Personnel Administration. Whether a county excise board may impose a salary administration plan on elected county officials, whereby the salaries of deputies and assistants are set according to a scale or classification, is not addressed by the statutes. As the power to adopt such a plan is not expressly granted to the excise boards, the authority to do so must arise, if at all, by necessary implication from the statutes. It is fundamental that state agencies possess only those powers expressly granted or necessarily inferred from the statutes granting the same, Boydston v. State, 277 P.2d 138 (Okl. 1954), W. S. Dickey Clay Mfg. Co. v. Ferguson Investment Co., 388 P.2d 300 (Okl. 1963). Any power of the excise board to adopt a "salary administration plan" must arise, if at all, by implication from the power granted that board under 19 O.S. 180.65 [19-180.65] (1979) to "approve" the salary requests for deputies and assistants. That statute provides that the "first assistant" or "first deputy" may receive a salary not to exceed ninety percent of the principal officer's salary; "second deputies" or "second assistants" may receive a salary not exceeding eighty percent of the principal officer's salary. Within these limits, the amount of salary shall be the amount which the officer "shall propose and establish the need for and which the county excise board may approve within salary and staffing requirements as may be prescribed by law." As to all other deputies, the salary of such person shall be determined by ". . .the principal officer and the county excise board based on responsibility, risks, skills, training, and experience required for such position and afforded by the subordinate . . ." In considering the language of 19 O.S. 180.65 [19-180.65] (1979) as it was used under the prior statute (wherein the county commissioners rather than the county excise board was the reviewing body) the Court in Nixon v. Roberts, 420 P.2d 898, 903 (Okl. 1966) held: ". . . we see that 19 O.S. 180.65 [19-180.65] (1961), supra, provides that within the specified limits the salaries of assistants are such amounts as the principal officer 'may propose and establish the need of and the county commissioners will approve' and 'determined by the principal officer and the county commissioners' for the adequate accomplishment of the functions of the office and performance of duties, and based upon the responsibility, risks, skills, training and experience required. We interpret these expressions as requiring the exercise of discretion on the part of the county commissioners in passing upon the proposal of the county attorney and the 'need' for the proposed rate. This is not an absolute discretion and is not discretion that can be exercised arbitrarily or capriciously." (Emphasis added) See also Board of County Commissioners of Nowata County v. Price, 385 P.2d 479 (Okl. 1963). These cases indicate that the determination of a deputy's salary may involve the exercise of discretion, but that discretion is not absolute and must be based on the criteria set out in 19 O.S. 180.65 [19-180.65] (1979) which provides for consideration of the function of the office, personal responsibility, risks, skills, training and experience of the employee. There is nothing in the new act which grants a broader scope of discretion on the excise boards than previously exercised by the county commissioners, nor is there any indication of a legislative purpose to grant a greater degree of discretion to the excise boards. In light of the history of the amendments it is evident that the Legislature sought to remove the county commissioners from the process of setting salaries of individual deputies or assistants. Under the new statute the commissioners retain the authority to recommend the total budget for all such salaries, subject, as before, to excise board approval. The primary change in the last amendment of 19 O.S. 180.65 [19-180.65] was the insertion of the excise boards into the process. The amendment grants them authority to determine whether the principal officer has established the need for the proposed salary of a deputy or assistant according t, b the criteria set out in the statute. They may reduce the proposed amount if they find the amount is not needed for the proper functioning of the office. It cannot reasonably be inferred that the power granted the excise boards under 19 O.S. 180.65 [19-180.65] (1979) extends further than the determination of the amount "needed", subject to the same restraints on that discretion as found in Nixon v. Roberts, supra. Nothing in the statutes concerning county excise boards gives them a general superintending control over local affairs. The provisions of 19 O.S. 180.65 [19-180.65] (1979) do not grant any authority to such excise boards to order or direct county officers to perform or refrain from performing any particular act. That statute grants these boards the limited discretion to determine the actual salary needs of county offices. The act which amended 19 O.S. 180.65 [19-180.65] (1978) also amended 68 O.S. 2487 [68-2487] [68-2487] (1971). That amendment purports to allow the excise board to strike items from the estimates of needs submitted to them those items which are "in excess of needs, as determined by the excise board." Even given its most liberal interpretation, however, 68 O.S. 2487 [68-2487] (1979) confers on the excise board no superintending authority over county affairs. At most the statute confers on such boards a limited check on expenditures, restrained by a standard of actual need. The excise boards, lacking general supervisory power over county government, are without statutory power to order or compel any officer to perform or refuse to perform an act. They may not, therefore, order or command county elected officials to implement a salary administration plan. It is fundamental that state agencies possess only those powers expressly granted or necessarily implied from their statutes, Oklahoma Tax Commission v. Fortinberry Co. Inc.,201 Okl. 537, 207 P.2d 301 (1949). Any power to implement such a plan de facto by controlling the budget appears inconsistent with the scope of the discretion granted by 19 O.S. 180.65 [19-180.65] (1979), that discretion being governed by actual need. Further, a rigid application of such system, particularly for entry level employees, may have an arbitrary and capricious effect by disregarding the risks, skills, training, experience, and responsibility of the individual. These criteria are set out in the statute itself, and may not be disregarded by the excise boards in the exercise of the discretion granted. Abuse of that discretion is controllable by mandamus, Nixon v. Roberts, supra. The statute contemplates that the county officer has the responsibility to propose and establish the need of his deputies' salaries. The excise board sits in review of the need for the salary and staff. These boards have the power to impose a check on these requests as a part of the system of checks and balances. The statute does not place these boards in a role of being a salary establishment panel; the inclusion of the principal officers in the salary establishment system negates such a blanket transfer of authority. We conclude that county excise boards are without authority to impose a "salary administration plan" for county offices. Your first question having been answered in the negative, it is unnecessary to answer your next two questions. Your fourth question concerns the power of the county excise boards to direct county employees or officers in regard to their duties. County excise boards have no express or implied authority to manage county affairs, and the general superintending power in the county resides in the board of county commissioners. County excise boards therefore lack authority to order or direct a county employee in regard to his duties, responsibilities, or times for completion of such duties. Your fifth question concerns whether a county equalization board can employ an employee other than an appraiser. 68 O.S. 2459 [68-2459] (1971) provides that county equalization boards ". . . shall not raise or lower the assessed valuation of any parcel or tract of real estate without hearing competent evidence justifying such change, or until at least one member of said board, or some person designated by the board, has made a personal inspection of such property and made a written report to the board . . .". This is the only statutory reference to a power of an equalization board to appoint one who is not a member of the board to perform services for the board. We find no implied authority to hire employees in this board, and under the principles announced in Oklahoma Tax Commission v. Fortinberry Co., Inc., 201 Okl. 537, 207 P.2d 301 (1949), conclude that county equalization boards are without authority to hire employees other than persons designated by the board to inspect and appraise property under 68 O.S. 2459 [68-2459] (1971). Your sixth question asks whether the county excise board may hire an employee to work for the equalization board. The county excise boards have no statutory authority to hire employees and no funds with which to pay them. The powers of such boards are derived from statutes. As no authority to hire such employees is granted the boards, and there being no implied authority to do so, such boards are without authority to hire employees regardless of intended duties. Your seventh question concerns whether county equalization boards may retain an employee after that board adjourns and a new board convenes. As previously discussed, such boards have no authority to hire an employee other than to designate a person to inspect and appraise property under 68 O.S. 2459 [68-2459] (1971). When a taxpayer challenges an adjustment or addition and the board of equalization fixes a day for hearing, such an appraiser, if appointed, must report in writing to the board. After adjournment of the board no new complaints may be filed. After decisions on complaints and completion of other duties, the equalization board adjourns. There is no authorization for the equalization board to retain an appraiser after such adjournment and after the protests have been heard. Accordingly, county equalization boards are without authority to retain an employee after adjournment and prior to the time a new board convenes by law. Question number seven having been answered in the negative, it is unnecessary to answer question eight. It is, therefore, the official opinion of the Attorney General that your questions be answered as follows: (1) County excise boards are without authority to impose on county officers a "salary administration plan" establishing salaries of deputies and assistants to such officers; (2) County excise boards are without authority to direct any county employee or officer regarding his duties, responsibilities, and time frame within which such directives will be accomplished; (3) A county equalization board is without authority to hire an employee other than a person designated to inspect property and report to said board pursuant to 68 O.S. 2459 [68-2459] (1971); (4) A county excise board is without authority to hire an employee and assign that person to work for the county equalization board; (5) A county equalization board is without authority to retain an employee after that board adjourns and before the new board convened by law. (JOHN GREGORY THOMAS) (ksg)