STATE ex rel. BROWN et al. v.
DUNNAWAY et al.

No. 34943.   Sept. 16, 1952.

248 P. 2d 232.

Thurman S. Hurst and Edwin S. Hurst, Tulsa, for plaintiffs in error.

Alton H. Rowland, Bartlesville, for defendants in error.

WELCH, J.   In 1950 the board of commissioners of the city of Bartlesville passed an ordinance pertaining to the control and operation of the city's public library.   The ordinance repealed a former ordinance which had provided for a board of library directors to be appointed by the mayor, with the consent and approval of the board of commissioners.   This latest ordinance contained provision for the appointment of a public library board by the board of commissioners; said library board to be known as the Bartlesville Public Library Board.   It was provided that such board shall be subject to removal at any time by the board of commissioners.   It was provided that the said library board, with approval of the board of commissioners, shall appoint a librarian and that the librarian shall be subject to removal at any time by the board of commissioners.

At the time of the 1950 enactment Ruth W. Brown was librarian and Darlene Essary was a member of the then existing board of library directors.   Acting under the 1950 enactment the city commissioners named certain persons, not including the said Darlene Essary, to membership on the Bartlesville Public Library Board.   This board, as so constituted, named one Virginia Lasley as acting librarian.

Ruth W. Brown, joined by Darlene Essary, commenced proceedings in mandamus asking that the 1950 ordinance be decreed to be invalid as being in conflict with certain statutes of the state; that the library board as constituted at the time of the 1950 enactment be decreed the legally constituted library board of the city of Bartlesville; that Ruth W. Brown be decreed as the rightful librarian, and that defendants be ordered to deliver to Ruth W. Brown the books, records and appurtenances of said library.   Edwin S. Dunnaway, E. F. Kindsvater, Milo L. Margenau, W. A. Forrest, Joe Hinton (Henton), members of the board of commissioners of the city of Bartlesville, Oklahoma; E. E. Jones, manager of the city of Bartlesville, Oklahoma; E. R. Christopher, Mrs. Lloyd Lynd, Dr. Elizabeth Chamberlin, Don Koppel, Russell Blachly, George Coahrs (Chors), and Virginia Lasley, were named as defendants.

Alternative writ of mandamus was issued.   The defendants filed a general demurrer to the plaintiffs' petition and a motion to quash the alternative writ.   At trial it was stipulated that the demurrer and motion to quash should be treated as a return to the alternative writ.   The aforementioned acts of the city commissioners under the 1950 ordinance were shown in stipulation and the aforementioned ordinances of the

city were introduced in evidence. It was further stipulated that Ruth W. Brown was not discharged by the old library board.

The plaintiff relators rested claim to relief on contention that the 1950 ordinance is invalid and that said enactment was ineffectual as an attempt to legislate the then existing library board out of office; that perforce said library board is still in office, and it not having removed the plaintiff relator, Miss Brown, she is still librarian.

Judgment was for the defendants quashing the alternative writ and denying application for peremptory writ.

The plaintiff relators appeal. The question presented is whether the 1950 ordinance, in so far as it conflicts with provisions of statutes of the state, is invalid and without force in its terms which authorized the acts of the city officials in effecting a change of librarian for the city.

The plaintiffs contend that the operation of public libraries by cities is a function involving the exercise of the police power of the state, relating to the public welfare, and that the Legislature is the supreme source of power in the determination of the method and manner of operation of such libraries; that the Legislature in enactment of 65 O. S. 1951, chap. 4, granted to cities the power to operate public libraries only in the manner and subject to the condition specified in the said statutes, and that an act of the governing board of a city in conflict with the said statutory provisions is invalid.

The defendants contend the operation of a city library is a matter of municipal concern and not a matter of state-wide or general public concern in which the state has a sovereign interest, and that provisions of the charter of the city of Bartlesville pertaining to supervision of the city library and vesting in the board of commissioners the power to supervise the city library prevails over the state statutes in conflict therewith.

65 O. S. 1951, chap. 4, in section 71, provides that the legislative body of any city or town shall have power to establish and maintain a public library for the use and benefit of the inhabitants of such city or town, and that after establishment thereof it shall be the duty of such legislative body to include in the annual financial statement and estimate of needs of the city or town an item of requested appropriation to maintain said public library. It is provided that such item be of a certain amount as determinable within certain prescribed limits. Section 72 provides that when any city council shall have decided to establish and maintain a public library, the mayor of such city shall proceed to appoint a board of six directors for the same. Section 73 prescribes the term of office of such directors and provides such mayor may, by and with consent of the council, remove any director for misconduct or neglect of duty. Section 74 provides that vacancies in the board of directors shall be filled in like manner as original appointments. Section 75 provides that said board of library directors shall have certain powers and duties as to operation of the library, including "power to appoint a suitable librarian" and "power to remove such appointees."

The Charter of the city of Bartlesville provides:

"The Board (of Commissioners) shall have power to acquire, maintain, extend and supervise * * * Public Library. Ordinances shall be enacted by the Board (of Commissioners) to carry out the general purposes embraced in this article, and, if deemed necessary by the Board (of Commissioners) committees or boards may be appointed to assist the City Superintendent or Manager under such rules and regulations as may be prescribed by ordinance. Members of such committees or boards shall serve without compensation."

The 1950 ordinance providing for a library board and that the members thereof be appointed by the city commissioners, and that the members there-

of may be removed by the city commissioners at any time, and providing that the city librarian may be removed at any time by the board of commissioners, appears to be in conflict with provisions of the statutes, supra. The 1950 ordinance, however, appears to be an enactment within specific authorization of the city's charter, in that it prescribes a mode and manner for the exercise of a power expressly conferred on the board of commissioners by the charter, that is, power to supervise the public library of the city.

It is well settled that a charter adopted by a city under authority of the Constitution becomes the organic law of the city and supersedes statutes of the state in so far as such statutes relate to matters of purely municipal concern, but where the charter provisions conflict with statutes of the state affecting matters of general statewide concern, or in matters where the state had a sovereign interest, the statutes control. State v. Linn, 49 Okla. 526, 153 P. 826, and Goodwin v. Oklahoma City, 199 Okla. 26, 182 P. 2d 762.

The issue here presented is resolved with a determination of whether the management or operation of a city library is a matter of municipal concern or is a matter of wider public concern and a matter in which the state has a sovereign interest.

The plaintiffs contend that in the various enactments pertaining to public libraries and in enactment of chapter 4, supra, which provides the manner in which a city's library shall be operated, the Legislature has made a determination that the operation of such libraries is a matter of general public or state-wide concern; that such a determination of the legislative body as declares the public policy of the state is not subject to review and reversal unless such determination is palpably and manifestly arbitrary and incorrect.

Hereunder attention is directed to provisions of statutes which provide for creation of a State Library Commission, with power to maintain traveling libraries, to give advice to schools and all public libraries, to conduct library courses in schools, to help devise plans for care of school district libraries and to aid teachers in school library administration. Reference is made to statutes which provide for the operation of a State Library, and the operation of County Circulating Libraries, and joint city and county libraries. Reference is made to the statute which requires a librarian to possess a library certificate issued under rules promulgated by the State Board of Library Examiners as a condition of appointment as a head librarian in any public library and to the statute which makes it the duty of the governing board of a city to include in the city's annual estimate of needs an item of requested appropriation for library purposes.

It is asserted that in the above mentioned enactment the Legislature has associated public libraries with schools and thus recognized a connection between public libraries and the state's educational system. Upon the premise of a holding of this court that "the public schools of the state are a matter of general public concern, as distinguished from a purely local or municipal affair," and under the postulate that public libraries further public education, it is urged that a city library should be held to be a matter of statewide or general public concern. It is suggested that the Legislature has recognized city libraries as a part of the state's educational system, and in enactment of chapter 4, supra, which prescribes the mode and manner of administration of a city library, the Legislature has recognized that administration of a city library, like administration of a city's schools, is a matter of general public concern.

Plaintiffs direct attention to the case of State ex rel. v. City of St. Louis, 318 Mo. 870, 2 S. W. 2d 713, wherein it is held that the City of St. Louis, in making a tax levy under the state

statutes, was bound to include a certain part thereof for library purposes. The people of St. Louis by vote had adopted a home rule charter and had voted to come under the Missouri Library Act which provides that when a majority of people of a city vote for a free public library then a tax shall be levied and collected in like manner with other general taxes and placed in a library fund. In discussion of the aspects of public libraries it was said by that court that a public library is an educational institution and the state may concern itself with any educational enterprise. Said the court:

"As a state policy the General Assembly has assumed control of public free libraries as educational institutions. That is a legislative determination that they are a matter of state concern."

In our statute, chapter 4, § 71, supra, which authorizes a city to establish a public library "for the use and benefit of the inhabitants of such city," and which provides that a city shall set aside a portion of its funds to maintain its library, there is no requirement of the city that the tax levying power of the state shall be used in such purpose. Lowden v. Washita County Excise Board, 186 Okla. 708, 100 P. 2d 459. In another enactment, 11 O. S. 1051 §671, it is provided:

"The council may establish and maintain public libraries and reading rooms at the expense of the city."

In these statutes it appears that the Legislature had recognized that the organization of a city public library is for the benefit of the territory of a city, and not for the state at large.

We find no expression in our statutes wherein the Legislature has assumed control of city libraries as educational institutions such as might be said to constitute a legislative determination that the operation of a city library is matter of state-wide concern.

Although it be said that the public library of a city is in the nature of an educational enterprise, it does not necessarily follow that its operation is of concern as regards the general welfare of the inhabitants of the state, or that its operation or the method of operation is a matter of state concern.

The provisions of chapter 4, supra, which prescribe a mode and manner for operation of a city library, were not meant to apply in all instances, for in 11 O. S. 1951 §961.20, it is provided:

"The public library of a statutory council-manager city shall constitute or be a part of, an administrative department; and shall be under the supervision and control of an officer or of a board established by ordinance and appointed by the city manager as the council may ordain."

This expression appears to be a recognition by the Legislature that the operation of a city library in the particular instance is a matter of strictly municipal concern.

It is immaterial that chapter 4, supra, was meant to have application in one instance, and §961.20 in another. As concerns their being expressions reflecting the public policy of the state as regards city libraries, § 961.20 leaves a clear inference of legislative thinking of the operations of a city library as a local affair.

Under the constitutional provision which authorizes a city to frame a charter for its own government as to become the organic law of such city, it would seem that the very modicum of self-government, as so authorized, must include the power to appoint and remove such officers or employees as administer a facility established for the use and benefit of the inhabitants of the city. It would seem that the method and manner of the exercise of such power and the administration of such facility is a matter of local concern. Obviously, the administration of the affairs of a city library is a local operation. We find no reason to say that such local operation is charged with

such a wide public interest as to be a matter of state concern. We hold that the operation and administration of a city public library is a matter of strictly municipal concern, and as the Legislature has provided a scheme of administration for a city library contrary to provisions of a city charter and ordinance enacted pursuant thereto, the statutory provisions must give way to the charter provisions.

The judgment is affirmed.

HALLEY, V.C.J., and CORN, GIBSON, DAVISON, JOHNSON, and O'-NEAL, JJ., concur.